## Hickory Hat Company v. Railway Express Company

Before Valentine, P. J., Aponick, Flannery, Lewis and Pinola, JJ.

*Louis Shaffer*, for plaintiff.

*T. G. Wadzinski*, for defendant.

APONICK, J., May 9, 1950.—This is on a motion for a new trial and for judgment n. o. v.

Plaintiff is a partnership and manufactures ladies' and children's hats. On March 8, 1949, it shipped eight packages of children's hats from its factory in Wilkes-Barre, Pa., via defendant express, to customers in New York City, and in South Norwalk, Conn. The hats were intended for the Easter trade—Easter, in 1949, falling on April 17th. Delivery was not made until several days after Easter. The consignees refused to accept the goods and, of course, refused to pay the transportation for them. Defendant thereupon placed the goods in storage and notified plaintiff. The latter, being unable to collect from its customers, sued defendant for the value of the goods, claiming that they were a total loss.

The complaint, in addition to setting out the above facts, contains an averment that defendant should have made delivery within 24 to 48 hours after accepting the shipment in Wilkes-Barre, Pa. Defendant admits that the delivery was not made until after Easter, and further admits that "barring unforeseen developments, packages delivered to defendants in Wilkes-Barre, Pa., are ordinarily delivered to consignees in New York City and South Norwalk, Conn., within 24 to 48 hours thereafter"; but contends that the delay was due to a strike of its employes over the period March 9, 1949, to April 18, 1949. It relies upon the terms of its receipt issued to plaintiff at the time the goods were picked up; which terms provided inter alia that it "shall not be liable for . . . delay caused by . . . strikes", and thereupon counterclaims for the unpaid transportation charges as well as for storage at the rate of $1.50 per month. Plaintiff replied that the delay was not caused by a strike but by a "slow-down" and by an embargo upon shipments into New York City. It therefore resists payment of transportation and storage

charges on the theory that the delay was due to defendant's "slow-down".

At the trial before a jury, it was shown that the goods were picked up in Wilkes-Barre, Pa., at 5:15 on the afternoon of March 8, 1949, and arrived in New York City early the following morning. On that day, although defendant's employes reported for work, they stood around and did little or no work. In the normal course of affairs, the goods would have been delivered within 24 to 48 hours after having been picked up in Wilkes-Barre. Since the employes would not work, defendant, on March 9, 1949, gave them 72 hours' notice of termination of their employment. On the very early morning of March 10, 1949, the employes refused to do any work whatsoever, and that situation continued until April 18, 1949. The labor situation was the result of an impasse between defendant and the union of its employes in negotiating a contract. The action of the employes was designed to speed up the negotiations.

Defendant brought out at the trial that plaintiff had an opportunity to sell these goods at 50 cents on the dollar and insists that the true measure of damages, if any, would be limited to one half of the value of the goods. However, the jury returned a verdict for plaintiff in the full amount of its claim and against defendant on the counterclaim.

From our refusal to give binding instruction, defendant, within the proper time, filed a motion for judgment non obstante veredicto. At the same time, it filed a motion for a new trial for, among other things, our failure to affirm certain points for charge to the jury.

Plaintiff conceded that it could not recover if there was a strike of defendant's employes. It is, our opinion that there was a strike and we shall therefore concern

ourselves with our reasons for so holding. The question of damages and the motion for a new trial become moot.

By definition, a strike is a concerted action on the part of employes resulting in a cessation of work and undertaken to enforce some demand upon the employer. See People v. Tepel et al., 3 N. Y. S. (2d) 779; Iron Molders' Union et al. v. Allis-Chalmers Company, 166 Fed. 45.

While we have been unable to find any definition of the term "slow-down", the A. L. I. Restatement of the Law of Torts §797, comment (a), defines a strike as:

". . . a concerted refusal by employees to do any work for their employer, or to work at their customary rate of speed, until the object of the strike is attained, that is, until the employer grants the concession demanded."

Since in a "slow-down" as such, there is a refusal by employes to work at their customary rate of speed, under the above definition a "slow-down" would be a strike. However, there are no cases to be found on the subject. Inasmuch as the testimony in this case establishes a "cessation" of work as distinguished from a "slow-down", we are neither required nor willing to hold that a "slow-down" is a strike.

This view of the case not only disposes of plaintiff's claim against defendant, but establishes defendant's rights against plaintiff under the counterclaim, the theory of the reply being that there was no strike.

We therefore should have granted defendant's motion for binding instructions; there was no contradiction of defendant's evidence that there was a cessation of work. Hence the motion for judgment n. o. v. is well taken.

Accordingly, now, May 9, 1950, the motion is allowed and judgment now entered for defendant non

obstante veredicto. An exception is noted and bill sealed for plaintiff.